**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| *IN RE EX PARTE APPLICATION* OF: | ) | |
| | ) | |
| | ) | |
| NOVARTIS PHARMA AG, | ) | Case 1:21-mc-00084-JMS-TAB |
| | ) | |
| Applicant. | ) | |
| | ) | |
| For an Order Pursuant to 28 U.S.C. § 1782, | ) | |
| Granting Leave to Obtain Discovery for Use in | ) | |
| Foreign Proceedings. | ) | |

**NOVARTIS PHARMA AG'S RESPONSE IN OPPOSITION TO**
**ELI LILLY & CO.'S 72(b) OBJECTIONS TO MAGISTRATE JUDGE'S ORDER**
**DENYING MOTION FOR RECIPROCAL DISCOVERY FILED UNDER ECF NO. 46**

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alpern v. Lieb*,
    38 F. 3d 933, 935 (7th Cir. 1994) ........................................................9

*In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in the
    Lab. Ct. of Brazil*,
    466 F. Supp. 2d 1020 (N.D. Ill. 2006) ..............................................6

*In re Application of Heraeus Kulzer GmbH*,
    No. 3:09-cv-530-RM, 2010 WL 2559795 (N.D. Ind. June 22, 2010), *rev'd on
    other grounds*, 633 F.3d 591 (7th Cir. 2011)...........................................10

*In re Application of LPKF Laser & Elecs. AG*,
    No. 14-CV-1616, 2015 WL 228063 (N.D. Ill. Jan. 14, 2015)...............................10

*In re Application of Shervin Pishevar*,
    439 F. Supp. 3d 290 (S.D.N.Y. 2020)..................................................11

*In re Application of TJAC Waterloo, LLC*,
    No. 3:16-mc-9-CAN, 2016 WL 1700001 (N.D. Ind. Apr. 27, 2016) .......................6

*In re Application of Victoria, LLC.*,
    No. 18-mc-21202-JOL, 2019 WL 8810208 (S.D. Fla. Jan. 11, 2019), *aff'd sub
    nom. Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810 (11th Cir. 2019) ..................8

*In re Atvos Agroindustrial Investimentos S.A.*,
    481 F. Supp. 3d 166 (S.D.N.Y. 2020)..................................................11

*CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*,
    34 F.4th 801 (9th Cir. 2022) ......................................................10, 12

*Davis v. Carmel Clay Schs.*,
    286 F.R.D. 411 (S.D. Ind. 2012).....................................................18

*E.E.O.C. v. Schwan's Home Serv.*,
    707 F. Supp. 2d 980 (D. Minn. 2010)..................................................11

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995).................................................9, 12, 13, 16

*Hall v. Norfolk Southern Ry. Co.*,
    469 F.3d 590 (7th Cir. 2006) ..........................................................7

*Heraeus Med. GmbH v. Biomet, Inc.*,
    No. 3:20-cv-802-JD-MGG, 2021 WL 4133710 (N.D. Ind. Sept. 10, 2021 .............7

*Holder v. Holder*,
    392 F.3d 1009 (9th Cir. 2004) ................................................................11

*In re Hulley Enters*.,
    400 F. Supp. 3d 62 (S.D.N.Y. 2019)..............................................10, 11

*In re Imanagement Servs., Ltd.*,
    No. 05-mc-0089-FB, 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ...................................22

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)..................................................................6, 8, 12, 16

*Jordan v. Commissioner, Mississippi Department of Corrections*,
    947 F.3d 1322 (11th Cir. 2020) ...............................................................11

*Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*,
    362 F.3d 401 (7th Cir. 2004) ..................................................................10

*Luxshare, LTD. v. ZF Auto. US,*
    Inc.,547 F. Supp. 3d 682 (E.D. Mich 201).............................................10

*Myers v. Equifax Info. Servs., LLC*,
    No. 1:20-cv-00392-JMS-DLP, 2021 WL 4992649 (S.D. Ind. Oct. 27, 2021) ...........13, 18, 20

*Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC,*
    No. 1:13-cv-00133-RLY-DKL, 2016 WL 126412 (S.D. Ind. Jan. 11, 2016).......................13

*In re Procter & Gamble Co.*,
    334 F. Supp. 2d 1112 (E.D. Wis. 2004)...................................................22

*Reynolds v. Jamison*,
    488 F.3d 756 (7th Cir. 2007) ..................................................................15

*In re Sabag*,
    No. 1:19-mc-00084-JPH-TAB, 2020 WL 3893970 (S.D. Ind. July 10, 2020)
    (*Sabag I*).......................................................................................9

*In re Sabag*,
    No. 119MC00084JPHTAB, 2021 WL 1634781 (S.D. Ind. Apr. 26, 2021) ...................10, 11

*Sampedro v. Silver Point Cap., L.P.*,
    958 F.3d 140 (2d Cir. 2020)........................................................... *passim*

*Weber v. Finker*,
    554 F.3d 1379 (11th Cir. 2009) ...............................................................11

*Weeks v. Samsung Heavy Indus. Co., Ltd.*,
    126 F.3d 926 (7th Cir. 1997) ..................................................................13

**Statutes**

28 U.S.C. § 636 .................................................................................................................11

28 U.S.C. § 636(b)(1)(A) .................................................................................................13

28 U.S.C. § 1291 ...............................................................................................................11

28 U.S.C. § 1782 ........................................................................................................ *passim*

**Other Authorities**

12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
      3068.2 (3d ed. 2022) .................................................................................................11

Fed. R. Civ. P. 71(a) ..........................................................................................................8

Fed. R. Civ. P. 72(a) ................................................................................................. *passim*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND .............................................................................. 2

        **A.**    The European Actions............................................................................ 2

        **B.**    The Parties' U.S. Section 1782 Actions................................................. 3

III.    LEGAL STANDARD AND STANDARD OF REVIEW.................................... 6

        **A.**    District Courts Have Broad Discretion Whether to Condition Section 1782 Applications on Reciprocal Discovery ................................................. 6

        **B.**    Clear Error Review Applies to Magistrate Judge Baker's Decision Denying Reciprocal Discovery............................................................................. 7

IV.     ARGUMENT ..................................................................................................... 12

        **A.**    Magistrate Judge Baker's Order Was Free from Error and Should Not Be Disturbed ............................................................................................... 12

        **B.**    Magistrate Judge Baker Properly Treated Lilly's Second Round of Argument in Support of Reciprocal Discovery as a Motion for Reconsideration ..................... 16

        **C.**    Even If De Novo Review Were Applied, the Court Should Still Deny Lilly's Request for Reciprocal Discovery ....................................................... 18

V.      CONCLUSION.................................................................................................. 22

## I.    <u>INTRODUCTION</u>

The discovery that Respondent Eli Lilly and Company ("Lilly") claims is "reciprocal" is actually the same discovery that Lilly has been seeking from Novartis Pharma AG ("Novartis") before five different judges in three federal district courts.  The first of those, Lilly's request for discovery from the Eastern District of Virginia, was denied on multiple grounds, and Lilly's appeal has been argued and is under submission in the Fourth Circuit.  In this case, Magistrate Judge Baker declined to exercise his discretion to award Lilly that same discovery in the Southern District of Indiana now, while Lilly's Fourth Circuit appeal is pending.  In fact, Magistrate Judge Baker denied Lilly's Indiana request twice—once following written and oral argument from the parties in connection with an April 13, 2022 hearing, and again after granting Lilly's request to present additional argument in a subsequent round of briefing.

There is no reason for this Court to disturb Magistrate Judge Baker's well-reasoned ruling, which was comfortably within the Magistrate Judge's discretion.  Lilly's request is a discretionary, non-dispositive one:  the case in this district was brought by Novartis, not Lilly, and Lilly's obligation to produce discovery—an obligation it has not even begun to satisfy—will continue irrespective of the outcome of this motion.  That is because Lilly is requesting that the Court impose a reciprocal discovery obligation as a condition of granting Novartis's application—an application that has already been granted and that Lilly chose not to oppose.  Instead, months later Lilly has now requested that the Court retrospectively condition Novartis's application on receipt of reciprocal discovery.  The magistrate judge declined to do so at this time, while Lilly is pursuing the same discovery elsewhere.  That decision was well within the magistrate judge's broad discretion to manage non-dispositive discovery matters, and Lilly has identified no clear error.  Indeed, even if this Court were to review *de novo* as Lilly requests (contrary to the weight of

1

caselaw under Rule 72 and Section 1782), the Magistrate Judge's decision to deny reciprocal discovery at this time was correct and should be affirmed.

## II.  FACTUAL BACKGROUND

The parties are engaged in patent litigation in Europe.  Lilly has sought to obtain discovery from the U.S. courts for use in Europe, pursuant to 28 U.S.C. § 1782, although its attempts to do so from Novartis have been held procedurally improper.  While litigating its objections to Lilly's requests in other districts, Novartis filed a reciprocal action to obtain discovery from Lilly in this district.  Lilly did not object to providing discovery—though it has not provided any—but is seeking to leverage this action to obtain, as "reciprocal" discovery, the same material it is trying to obtain elsewhere.

### A.    The European Actions

Novartis and Lilly are pharmaceutical companies whose respective products, Cosentyx® and Taltz®, compete.  Novartis's Cosentyx® is indicated for the treatment of conditions such as plaque psoriasis and psoriatic arthritis. The active ingredient of Cosentyx® is an antibody, secukinumab, that binds to the proteins IL-17A and IL-17A/F, which are involved in the inflammatory immune response.  Lilly's Taltz® is indicated for a near-identical set of conditions as Cosentyx®.  The active ingredient of Taltz® is an antibody, ixekizumab, that also binds to the proteins IL-17A and IL-17A/F.

In 2020, Novartis acquired a portfolio of patents and patent applications relating to the IL-17A/F protein from another biotechnology company, Genentech, Inc.  One of the patents in this "IL-17A/F portfolio" is European Patent No. 2 784 084 ("EP '084").  The parties are engaged in multiple proceedings in Europe:  Lilly has initiated various challenges in European tribunals attacking the validity of EP '084, and Novartis is asserting in Ireland, Italy, and Switzerland that Lilly's activities relating to Taltz® infringe the national counterparts to EP '084.

2

### B.      The Parties' U.S. Section 1782 Actions

The present U.S. discovery disputes between the parties began in June 2021, when Lilly filed a Section 1782 application in the Eastern District of Virginia to obtain discovery from Novartis.[1]  *See* No. 1:21-mc-00017-TSE-IDD.  But Novartis, a Swiss company with no presence in the United States, does not "reside" in that district, nor is it "found" there, as Section 1782 requires.  After Lilly's application was granted *ex parte*, it sought to serve a subpoena thereunder on an individual officer of Novartis's parent company at her home in Chicago.  *See* Ex. A (Lilly Motion to Compel at 1, 5–6).  Novartis intervened and moved in the Eastern District of Virginia to quash the subpoena.  *Id.* at 6; Ex. B (Novartis Motion to Transfer at 2).  While that motion was being briefed, Lilly initiated a new and redundant proceeding in the Northern District of Illinois by filing a motion to compel compliance with its subpoena there, attempting to get a second bite at the Section 1782 discovery it sought.  *See* No. 1:21-cv-04437-ARW-MDW.  Ex. B (Novartis Motion to Transfer at 2)*.*  The parties agreed to move to transfer Lilly's Motion to Compel back to the Eastern District of Virginia.  *Id.*

The magistrate judge in the Eastern District of Virginia denied Novartis's motions to vacate and quash, and although Novartis made clear that it would challenge that decision before the district court, it faced a live discovery obligation while its objections were pending.  Accordingly, the parties met and conferred regarding Lilly's discovery requests.  Ex. C (EDVA Joint Status Report).  Novartis agreed, in principle, to produce various categories of discovery in response to Lilly's subpoena while pursuing its objections.  *Id.* at 9–12.  In the course of these discussions, Novartis raised reciprocal discovery and asked if Lilly would be willing to provide the same,

---

[1] Lilly also filed a Section 1782 application in California against Genentech, Inc. in June 2021.  Genentech has produced documents pursuant to that subpoena.

either in the Eastern District of Virginia or in response to a new Section 1782 action Novartis would file in the Southern District of Indiana. *Id.* at 6, 10–11. Lilly refused to agree to reciprocal discovery in the Eastern District of Virginia, contending that any request by Novartis should be decided by the Southern District of Indiana in a separate Section 1782 action. *Id.*

In parallel with that negotiation on reciprocal discovery from Lilly in Virginia, Novartis submitted an affirmative Section 1782 application in Lilly's home district—this Court—on November 10, 2021 (ECF No. 1). Lilly has not raised any jurisdictional or prudential objection to that application. This Court granted that application on November 23, 2021 and ordered that Novartis may seek discovery from Lilly pursuant to its subpoena for use in the European proceedings (ECF No. 9).

Despite not opposing the subpoena or moving to quash it, Lilly has not produced a single document. Instead, Lilly served objections on January 17, 2022, responding to each request with either a refusal to search for and produce documents or an offer to meet and confer to narrow the scope the requests. The parties have been regularly meeting and conferring by phone and email[2] and participating in status conferences with Magistrate Judge Baker since Lilly served its objections. However, Lilly has yet to produce a single document in response to Novartis's subpoena.

On January 18, 2022, the district judge in the Eastern District of Virginia issued an opinion sustaining Novartis's objections, reversing the magistrate judge, and holding that Novartis was not subject to Section 1782 discovery in that district; it neither "reside[d]" nor was

---

[2] Counsel for Novartis was substituted in February 2022, and Novartis responded in writing to Lilly's objections on March 2, 2022, explaining the basis for Novartis's requests and agreeing to meet and confer to see whether some requests could be narrowed.

"found" there, and was not subject to specific personal jurisdiction there.  Lilly appealed that decision to the Fourth Circuit on January 28.  The appeal was briefed on an expedited schedule and set for argument on May 4.  *See* No. 22-1094.

On March 28, ten weeks after the Eastern District of Virginia decision vacating Lilly's Section 1782 application, Lilly informed Novartis for the first time that it refused to produce any discovery in *this* action, despite this Court's order granting Novartis's request, unless Novartis agreed to provide reciprocal discovery.  Ex. D (Lilly March 28 Letter).  Lilly raised this reciprocal discovery request with the Court for the first time in a written statement to Magistrate Judge Baker on April 8, 2022.  Ex. E (Lilly April 8 Statement).  Novartis submitted a written statement on April 11, and the parties each presented arguments regarding the reciprocal discovery request to the Court during an April 13 hearing.  *See* Ex. F (Novartis April 11 Statement); ECF No. 35. Magistrate Judge Baker denied the request orally at the hearing, and issued a corresponding order the next day, on April 14, "overrul[ing] Lilly's objection to producing discovery contingent upon reciprocal discovery from Novartis."  (ECF No. 38.)  The Magistrate Judge agreed that "[t]he Court has discretion to order reciprocal discovery," but declined to exercise it in Lilly's favor, because "the issue of Lilly's entitlement to § 1782 discovery from Novartis is being litigated in another forum, and . . . the Eastern District of Virginia has denied Lilly's request for this discovery."  (*Id.* at 1-2).

After Novartis reached out to move forward with negotiating narrowed requests, Lilly did not respond but instead emailed Magistrate Judge Baker requesting further briefing on reciprocal discovery.  Ex. G (Lilly April 14 Email).  Magistrate Judge Baker granted that request.  (ECF No. 39.)  After considering the argument presented in the parties' second round of argument on the reciprocal discovery request, Magistrate Judge Baker denied reciprocal discovery a second time.

([ECF No. 45](#).)  Lilly's arguments were the same, and there was no basis for reconsidering his prior determination.

### III.    LEGAL STANDARD AND STANDARD OF REVIEW

#### A.    District Courts Have Broad Discretion Whether to Condition Section 1782 Applications on Reciprocal Discovery

As the Supreme Court has emphasized, Section 1782 "authorizes, but does not require, discovery assistance" to foreign courts, even where the threshold statutory requirements are met. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 266 (2004); *see also id.* at 252-53.  A district court in a Section 1782 case thus has "discretion" to "refuse to issue an order or [to] impose conditions it deems desirable."  *Id.* at 260-61 (citation omitted).

That discretion is even broader in deciding whether to impose *conditions* on the grant of Section 1782 discovery.  As the Seventh Circuit has directed, once the threshold statutory showing is met, a "district court's discretion under Section 1782 is governed by 'ordinary tools of discovery management, including Rule 26.'"  *In re Application of TJAC Waterloo, LLC*, No. 3:16-mc-9-CAN, 2016 WL 1700001, at *2 (N.D. Ind. Apr. 27, 2016) (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011)); *see also In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in the Lab. Ct. of Brazil*, 466 F. Supp. 2d 1020, 1033 (N.D. Ill. 2006) ("Once the court has decided to grant discovery [under Section 1782], the discovery is managed by the Federal Rules of Civil Procedure unless the court orders otherwise.").

A district court's power to order reciprocal discovery arises from this broad discretion to manage and condition Section 1782 discovery.  *See Intel*, 542 U.S. at 262 ("When information is sought [under Section 1782] by an 'interested person,' a district court could condition relief upon that person's reciprocal exchange of information.").  Indeed, "[n]othing in the text of section 1782 even contemplates reciprocal discovery," and while "procedural parity" between U.S. and foreign

litigations was one of Congress's concerns in enacting Section 1782, "it trusted that district courts would decide the appropriateness of reciprocal discovery" and therefore "granted district courts broad discretion to grant or deny reciprocal discovery." *Sampedro v. Silver Point Cap., L.P.*, 958 F.3d 140, 144–45 (2d Cir. 2020) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)); *see also Heraeus Med. GmbH v. Biomet, Inc.*, No. 3:20-cv-802-JD-MGG, 2021 WL 4133710, at *9 (N.D. Ind. Sept. 10, 2021) ("If a district court is concerned that granting discovery under § 1782 will engender problems in a particular case, it is well-equipped to determine the scope and duration of that discovery. In addition, Section 1782 provides courts with wide discretion to tailor such discovery to avoid attendant problems.") (internal quotation marks omitted) (quoting *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996)). Thus, granting or denying the respondent's request for reciprocal discovery from the applicant means deciding whether to attach a condition to the applicant's underlying Section 1782 discovery request.

### B. Clear Error Review Applies to Magistrate Judge Baker's Decision Denying Reciprocal Discovery.

Because Magistrate Judge Baker's order denying Lilly's request for reciprocal discovery merely declined to impose a condition on the discovery granted pursuant to Novartis's unopposed Section 1782 application, it was not dispositive of a "claim or defense" under Rule 72 and therefore is subject to clear-error review. Federal Rule of Civil Procedure 72 provides that, when a party objects to a magistrate judge's order, "district judges are to review non-dispositive decisions for clear error and dispositive rulings de novo." *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 594–595 (7th Cir. 2006). Under Rule 72, a non-dispositive motion is defined as one that is "not dispositive of a party's *claim or defense.*" Fed. R. Civ. P. 72(a) (emphasis added). Lilly claims that all orders granting or denying discovery in a Section 1782 action are dispositive, and that this is such an order. That is incorrect for two reasons. First, even if an order denying *the applicant*

discovery were deemed dispositive, an order denying only *reciprocal* discovery (and only for the time being) is not dispositive. Second, this district has rejected Lilly's premise, holding that Section 1782 matters are non-dispositive more broadly.

The federal courts that have encountered this issue have treated a magistrate's order on reciprocal discovery under Section 1782 as *non*-dispositive. *Sampedro*, 958 F.3d at 142 & n.1 ("[T]he district court concluded that the magistrate judge's order was not clearly erroneous given the broad discretion granted to district courts to determine if and when reciprocal discovery is warranted. We agree. . . . The district court properly reviewed the magistrate judge's order for clear error, *see* Fed. R. Civ. P. 72(a), since the decision about whether to grant reciprocal discovery was nondispositive." (citation omitted)); *In re Application of Victoria, LLC.*, No. 18-mc-21202-JOL, 2019 WL 8810208, at *12 (S.D. Fla. Jan. 11, 2019) (applying clear error review to magistrate judge's order denying reciprocal discovery), *aff'd sub nom. Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810 (11th Cir. 2019). So too here: clear error review should be applied to Magistrate Judge Baker's ruling denying Lilly's request to condition Novartis's Section 1782 application on reciprocal discovery.

Furthermore, the application of clear error review to Section 1782 reciprocal discovery requests accords with Rule 72's definition of non-dispositive decisions as those that are "not dispositive of a party's claim or defense." Fed. R. Civ. P. 71(a). A district court's discretion to order reciprocal discovery in Section 1782 actions arises from its discretion to manage the scope of discovery, including by imposing appropriate conditions or limitations. *See Intel*, 542 U.S. at 262 ("When information is sought [under Section 1782] by an 'interested person,' a district court *could condition* relief upon that person's reciprocal exchange of information.") (emphasis added); *see also Euromepa*, 51 F.3d at 1101 (district court "could have *conditioned* relief upon the parties'

8

reciprocal exchange of information" (emphasis added)); *Sampedro*, 958 F.3d at 143 ("whether to *condition* section 1782 discovery on reciprocal discovery certainly falls within [the] broad grant of discretion" to district courts under the statute) (emphasis added).  Lilly contends that Magistrate Judge Baker's decision was dispositive because it "denied the ultimate, indeed, the only, relief sought by Lilly" (Lilly's Objs. at 16) but Rule 72 does not refer to "relief."  Instead, clear error review applies under the Rule to any decision that does not dispose of a party's "claim or defense." Fed. R. Civ. P. 72(a).  Where the cases are uniformly clear that reciprocal discovery is merely a condition placed on an applicant's entitlement to Section 1782 discovery, Lilly is without support for its argument that a reciprocal discovery condition is a "claim" that was disposed of by Magistrate Judge Baker's order.[3]  *Cf. In re Sabag*, No. 1:19-mc-00084-JPH-TAB, 2020 WL 3893970, at *1 (S.D. Ind. July 10, 2020) (*Sabag I*) (noting, in the context of a Rule 24 motion to intervene, that in "a Section 1782 action, there are no plaintiffs or defendants" such that "it is difficult to imagine how any prospective intervenor could assert *a claim or defense* in such an action") (emphasis added).

Lilly cites no cases finding a reciprocal discovery order to be dispositive.  (Lilly Objs. at 14–15.)  Rather, Lilly points to a Ninth Circuit opinion from last month holding that a magistrate's denial of an initial Section 1782 application itself is dispositive, because that denial "resolv[es] the

---

[3] Lilly also cites to a Seventh Circuit case finding a sanctions ruling to be dispositive under Rule 72 (Lilly Objs. at 14), but the reasoning of this opinion is also inapplicable here.  In *Alpern v. Lieb*, the court reasoned that "[a]lthough an award under Rule 11 is conceptually different from a decision on the merits, it requires one party to pay money to another; the denial of a request for sanctions has an effect similar to the denial of a request for damages." 38 F.3d 933, 935 (7th Cir. 1994).  For this reason, the court held that the "power to award sanctions, like the power to award damages, belongs in the hands of the district judge." *Id*.  There is no monetary recovery at stake for Lilly's request that the court condition Novartis's Section 1782 application on reciprocal discovery.  Instead, Lilly's request is the type of discovery matter routinely decided by magistrate judges and subject to clear error review.

entire case presented to the federal court." *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801 (9th Cir. 2022). However, *CPC* does not control here, particularly where the majority of courts to consider what standard of review applies to a magistrate judge's ruling on an initial application brought under 28 U.S.C. § 1782(a) have held that such a decision is non-dispositive and therefore reviewed only for clear error. *See Luxshare, LTD. v. ZF Auto. US, Inc.*, 547 F. Supp. 3d 682, 687 (E.D. Mich. 2021) (collecting cases), *cert. granted on other grounds*, 142 S. Ct. 637 (2021); *In re Hulley Enters.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (same); *see also In re Application of Heraeus Kulzer GmbH*, No. 3:09-cv-530-RM, 2010 WL 2559795, at *1 (N.D. Ind. June 22, 2010) (applying clear error review to magistrate judge's denial of Section 1782 application), *rev'd on other grounds*, 633 F.3d 591 (7th Cir. 2011).[4] This district has applied the same rule, noting that

---

[4] While Lilly cites to one Northern District of Illinois case (in addition to a handful of out-of-circuit outlier cases) in which the court reviewed a magistrate's denial of a Section 1782 application de novo (Lilly Objs. at 15), that *de novo* review was based on a misreading of a Seventh Circuit opinion. Specifically, the court in that case justified its application of *de novo* review by citation to a Seventh Circuit case that held that magistrate Section 1782 rulings are deemed "*final.*" *In re Application of LPKF Laser & Elecs. AG*, No. 14-CV-1616, 2015 WL 228063, at *2 (N.D. Ill. Jan. 14, 2015) (emphasis added) (quoting *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 403 (7th Cir. 2004)). But that holding related only to whether such orders are "*final*" for purposes of appellate jurisdiction, 362 F.3d at 403 ("Kestrel's contention that we lack appellate jurisdiction is incorrect. Orders such as this, like orders enforcing subpoenas, are final and appealable because they dispose of all issues in the proceeding."), not to whether a magistrate's Section 1782 order is "dispositive" under Rule 72. And this court has already distinguished *Kestrel* and *In re LPKF* on that basis, applying clear error review to a Section 1782 application order. *In re Sabag*, No. 119MC00084JPHTAB, 2021 WL 1634781, at *2 (S.D. Ind. Apr. 26, 2021); *see also Hulley*, 400 F. Supp. 3d at 72 ("[W]hether an order is 'final' or 'immediately appealable' under 28 U.S.C. § 1291 is not the same as whether an order is dispositive for purposes of a magistrate judge's authority under 28 U.S.C. § 636 or Federal Rule of Civil Procedure 72.").

Similarly, although Lilly cites to Wright & Miller's Federal Practice and Procedure for the proposition that Section 1782 discovery is "dispositive," the cases Wright & Miller cites as support belie that statement. In fact, the supporting footnotes provide a number of cases finding this discovery to be *non*-dispositive, alongside one case in which a dissenting judge suggested it should be dispositive and several cases addressing other types of discovery motions. *See* 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3068.2 at nn. 32, 33 (3d ed. 2022) (citing *Khrapunov v. Prosyankin*, 931 F.3d 922, 931 (9th Cir. 2019) (dissenting judge noting lack of appellate precedent regarding dispositive status of Section 1782 discovery and stating "I would hold that such decisions are dispositive"); *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) (party waived argument that Section 1782 discovery should not have been referred to magistrate); *Holder v. Holder*, 392 F.3d 1009 (9th Cir. 2004) (Hague Convention case not

"[d]iscovery issues are not dispositive," and "Section 1782 is a discovery statute." *In re Sabag*, No. 1:19-mc-00084-JPH-TAB, 2021 WL 1634781, at *2 (S.D. Ind. Apr. 26, 2021) (*Sabag II*). *Sabag II* therefore held that a magistrate judge's decision on a Section 1782 application is not dispositive, because such an application is "merely a preliminary part of 'litigation on the merits [that] occurs in a foreign tribunal'" and therefore "do[es] not make any step toward final disposition of the merits of the case." *Id.* (quoting *Heraeus*, 881 F.3d at 560). Where even a magistrate judge's decision whether to grant a Section 1782 application in the first place is non-dispositive, a decision regarding what conditions to impose on that grant, including a request for reciprocal discovery, is certainly non-dispositive.

Indeed, even if this Court were inclined to follow the Ninth Circuit rather than the majority of cases cited above (including from this district) regarding the dispositive effect of a magistrate's order on an *initial* Section 1782 application, *CPC*'s reasoning has no bearing on reciprocal discovery. In *CPC*, the appellee argued plain error review should apply because denial of the Section 1782 application was non-dispositive *with respect to the foreign proceedings*, to which the application was "merely ancillary." 34 F.4th at 801. The Ninth Circuit rejected this argument because the appropriate question "must" focus on whether the magistrate's ruling was "dispositive of the *federal court* proceedings," rather than of the foreign proceedings. *Id.* (emphasis added). Because denial of the Section 1782 application "effectively cut off all avenues for relief in federal

_____

addressing Section 1782 discovery); *Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322 (11th Cir. 2020) (motion to quash subpoena not involving Section 1782 discovery); *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 174 (S.D.N.Y. 2020) (finding Section 1782 application to be *non*-dispositive); *In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 301 (S.D.N.Y. 2020) (same); *Hulley*, 358 F. Supp. 3d at 72 (same); *E.E.O.C. v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 987 (D. Minn. 2010) (motion to enforce administrative subpoena not involving Section 1782 discovery).

court" for the applicant, whether to grant or deny the initial Section 1782 application "was a dispositive matter." *Id.* As explained above, Lilly's reciprocal discovery request is a condition on, and therefore "merely ancillary" to, Novartis's Section 1782 application. *See Intel*, 542 U.S. at 262 (courts can "condition relief" under Section 1782 on "reciprocal exchange"); *Euromepa*, 51 F.3d at 1101 (same); *see also Sampedro*, 958 F.3d at 143 (courts have discretion to "condition section 1782 discovery on reciprocal discovery"). It is not "dispositive of the federal court proceedings," which would not be terminated by a ruling *either way* on Lilly's request.

Thus, even under *CPC*, clear error review should be applied to Magistrate Judge Baker's decision refusing to condition Novartis's Section 1782 application on reciprocal discovery.

## IV.    ARGUMENT

### A.    Magistrate Judge Baker's Order Was Free from Error and Should Not Be Disturbed

Magistrate Judge Baker appropriately exercised his broad discretion to deny Lilly's request to condition Novartis's Section 1782 application on an award of reciprocal discovery. In a single line of its brief, Lilly contends that Magistrate Judge Baker's order denying reciprocal discovery should be overturned even if clear error review is applied, but Lilly nowhere references the clear error standard, let alone tries to satisfy it. Nor could Lilly do so, as Magistrate Judge Baker's order was free from error and consistent with the law.

Review of a magistrate judge's decision on a non-dispositive motion is deferential, and the Court may sustain an objection to such an order only where it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous "only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Myers*

*v. Equifax Info. Servs., LLC*, No. 1:20-cv-00392-JMS-DLP, 2021 WL 4992649, at *1 (S.D. Ind. Oct. 27, 2021) (citation omitted). When reviewing a non-dispositive matter for clear error, the court considers only arguments and issues put forth before the Magistrate Judge. *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, No. 1:13-cv-00133-RLY-DKL, 2016 WL 126412, at *3 (S.D. Ind. Jan. 11, 2016).

A district court has even broader discretion in the context of a request to condition a Section 1782 application on reciprocal discovery than in the context of deciding whether or not to grant a Section 1782 application in the first place. "Congress purposefully engineered section 1782 as a one-way street. It grants wide assistance to others, but demands nothing in return." *Euromepa*, 51 F.3d at 1097 (citations omitted). Specifically, "Congress granted district courts broad discretion to grant or deny reciprocal discovery." *Sampedro*, 958 F.3d at 145. In *Sampedro*, respondent argued that the district court abused its discretion where the magistrate judge purportedly created a bright-line rule denying reciprocal discovery to nonparties to foreign proceedings. *Id*. The Second Circuit rejected this argument, holding that the Magistrate Judge's order, and the District Judge's decision upholding that order, was "a permissible exercise of the court's discretion to grant reciprocal discovery." *Id.* "In light of the high level of discretion given to district courts to determine whether and under what circumstances reciprocal discovery is appropriate," the Second Circuit affirmed the denial. *Id.*

Indeed, on two occasions, Magistrate Judge Baker explained the basis for exercising his discretion not to grant reciprocal discovery. In his first order, Magistrate Judge Baker found that, although he would be permitted to grant reciprocal discovery as part of the broad discretion granted him to manage Section 1782 discovery, he did not deem it "proper[]" to do so in view of the pending appeal in the Fourth Circuit. (ECF No. 38 at 1–2.) Specifically, Magistrate Judge Baker

"decline[d] to exercise [his] discretion to order Novartis to produce reciprocal discovery" where Lilly had "filed its own § 1782 applications against Novartis," with oral argument to take place shortly in the Fourth Circuit.  *Id.*  Thus, "the issue of Lilly's entitlement to § 1782 discovery from Novartis is being litigated in another forum."  *Id.*  In his second order, denying reconsideration, Magistrate Judge Baker further noted that a "reciprocal discovery order, *issued now*, would threaten inconsistent outcomes where the very same discovery request is on appeal to the Fourth Circuit and was scheduled for oral argument on May 4, 2022."  (ECF No. 45 at 2 (emphasis added).)  The Magistrate Judge "agree[d] with Novartis that reciprocal discovery should be denied at least during the pendency of the Fourth Circuit appeal in order to prevent inefficiency, potential forum shopping, and the risk of conflicting outcomes."  *Id.*  Magistrate Judge Baker then rejected Lilly's arguments that the timing of the European actions and Novartis's opposition to Lilly's original Section 1782 application supported reciprocal discovery, noting that Lilly's actions belied any urgency and that the record demonstrated it was *Lilly*, not Novartis, who had sought discovery while refusing to provide any of its own.  *Id.* at 3.  Magistrate Judge Baker acted well within his discretion to deny reciprocal discovery, and to deny reconsideration thereof, on these grounds.

Lilly cannot show that Magistrate Judge Baker's exercise of discretion was clearly erroneous.  Lilly has identified no factual defects with Magistrate Judge Baker's order.  Neither was his decision contrary to law.  A judge's exercise of discretion is only legally improper where "one or more of the following circumstances is present:  (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary."  *Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007).  None of these circumstances exists here.  Lilly's objections fail to identify an absence of evidence, an

14

erroneous legal conclusion, an erroneous factual finding, or any arbitrariness in Magistrate Judge Baker's decision. Lilly does not assert that Magistrate Judge Baker's exercise of discretion was contrary to law or infected by factual error, and his decision denying reciprocal discovery should not be overturned on clear error review.

At best, Lilly's objections set out factors that might justify an alternative exercise of discretion to allow reciprocal discovery, but this falls far short of clear error warranting reversal. Lilly argues in turn that the discovery it requests would promote parity between the parties (Lilly's Objs. at 16–18), that reciprocal discovery could be ordered in Indiana without creating conflict with Lilly's Section 1782 application in Virginia (*id.* at 19–22), that Lilly's delay in seeking reciprocal discovery is justified (*id.* at 22–23), and that Novartis's defense against Lilly's earlier-filed Section 1782 application weigh in favor of reciprocal discovery (*id.* at 23–24). None of these arguments, even if credited, supports reversal here. Taken at face value, Lilly contends only that certain factors "favor" its request for reciprocal discovery (Lilly's Objs. at 18, 24) and that there is "no bar here to granting reciprocal discovery" (*id.* at 22), but even if correct—which Novartis contests—this would not suffice to reverse Magistrate Judge Baker. Lilly complains that the Magistrate Judge did not adequately "consider" these factors (Lilly's Objs. at 18), but there is no authority requiring him to have done so.[5] *Cf. Intel*, 542 U.S. at 262 (referring to district court's discretion to condition Section 1782 applications on reciprocal discovery, without identifying any limitations or guidelines for such discretion); *Sabag II*, 2021 WL 3187538, at *5 (same). Moreover, even if these factors were the operative ones for the Court to consider, and even if any

---

[5] In support of its proffered factors informing a court's discretion regarding reciprocal Section 1782 discovery, Lilly cites only to an unpublished, ten-year-old case from the Southern District of New York. (Lilly's Objs. at 17(citing *Application of Consorcio Minero, S.A. v. Renco Grp.*, No. 11-mc-354 2012 WL 1059916, at *3-4 (S.D.N.Y. Mar. 29, 2012).)

of these factors could have *permitted* Magistrate Judge Baker to exercise his discretion to order reciprocal discovery, they would not have *required* him to do so, as would be necessary to support reversal for clear error.  *See Sampedro*, 958 F.3d at 145 (no obligation to oversee reciprocal discovery, even where permitted as an exercise of the court's discretion); *Euromepa*, 51 F.3d at 1097 (same).

    **B.**    **Magistrate Judge Baker Properly Treated Lilly's Second Round of Argument in Support of Reciprocal Discovery as a Motion for Reconsideration**

Lilly's contention that it was improper for Magistrate Judge Baker to treat Lilly's second request for reciprocal discovery as a motion for reconsideration is belied by the record of proceedings before the magistrate judge, which demonstrates that Lilly had ample opportunity to fully present its position in two rounds of argument to the Court.  (Lilly's Objs. at 24–25.)

Lilly submitted an initial round of written and oral argument in support of its request for reciprocal discovery and only suggested these submissions were insufficient after it received an unfavorable result.  If Lilly felt that formal briefing was necessary to fully present its request for reciprocal discovery, it could have raised this topic during the parties' March 9, 2022 conference with Magistrate Judge Baker, but Lilly did not do so.  (ECF No. 35.)  Instead, Lilly first mentioned reciprocal discovery to the Court in a three-page letter to Magistrate Judge Baker dated April 8, 2022, ahead of a second conference scheduled for April 13.  Lilly's April 8 letter objected to its obligation to produce any discovery pursuant to Novartis's Section 1782 application without an order awarding reciprocal discovery, seeking that the court "condition" Novartis's relief on "reciprocal exchange of information" under *Intel*.  *See* Ex. E at 3 (Lilly April 8 Statement).  In support of this objection, Lilly provided three pages of argument, describing the same factors Lilly

continues to argue support discretion to order reciprocal discovery. *Id.*[6]  Oral argument at the hearing on April 13, 2022 was focused solely on Lilly's request for reciprocal discovery, with both parties addressing the merits of the request.  Although Lilly now characterizes Magistrate Judge Baker's decision following that argument as "premature[]," neither party suggested at the time that the matter was unripe for decision.  At the conclusion of the hearing, Magistrate Judge Baker informed the parties that he declined to exercise his discretion to condition Novartis's discovery from Lilly on the requested reciprocal discovery.

Magistrate Judge Baker properly treated Lilly's later request for further briefing on the reciprocal discovery as a motion for reconsideration.  After Magistrate Judge Baker's oral ruling and issuance of the corresponding written order, Lilly sent an email to the Court providing a further two pages of argument in support of Lilly's reciprocal discovery request and seeking leave to submit further briefing on the issue.  Ex. G (Lilly April 14 Email).  After its request for briefing was granted, Lilly submitted ten additional pages of argument across its opening and reply briefs in support of reciprocal discovery.  (ECF Nos. 41, 44).  These briefs repeated the same substance of Lilly's statement and oral argument provided in connection with the April 13 hearing.  They plainly amounted to a second bite at the apple.  Although Lilly argues that "neither party treated" its motion as one for reconsideration, Lilly has admitted that the reason it sought the additional briefing is that it believed "the Magistrate's order misunderstood the nature of the legal question pending at the Fourth Circuit."  (Lilly's Objs. at 24.)  This is precisely the "limited function" of a

---

[6] Lilly could have also addressed Novartis's positions on reciprocal discovery in Lilly's joint statement, but chose not to do so.  Novartis offered that the parties delay finalizing their statements until having had a chance to revise the same in response to the other's drafts, but Lilly preemptively sent its own written statement to Magistrate Judge Baker immediately after receiving Novartis's draft on Friday, April 8 instead of on Monday, April 11 when Novartis indicated it would send its statement.  *See* Ex. F (Novartis April 11 Statement).

motion to reconsider, which is "to be used where the Court has patently misunderstood a party . . . or has made an error not of reasoning but of apprehension." *Davis v. Carmel Clay Schs*., 286 F.R.D. 411, 412 (S.D. Ind. 2012) (internal quotation marks omitted) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

There is no clear error supporting reversal here where Lilly has identified neither any factual error nor any "statute[], case law, or rule[] of procedure" that Magistrate Judge Baker misapplied in treating the second round of argument as seeking reconsideration. *Myers*, 2021 WL 4992649, at *1 (S.D. Ind. Oct. 27, 2021). Furthermore, even if Magistrate Judge Baker had not treated Lilly's second round of argument as a motion for reconsideration, as explained above, Lilly has still not shown any clear error or abuse of discretion in the decision to deny reciprocal discovery a second time. Magistrate Judge Baker provided a well-reasoned decision explaining the factors he felt weighed against exercising his discretion to award reciprocal discovery, and Lilly has identified no basis to disturb this decision.

### C.    Even If De Novo Review Were Applied, the Court Should Still Deny Lilly's Request for Reciprocal Discovery

Although clear error review applies to a denial of reciprocal discovery, the same reasons that Magistrate Judge Baker declined to exercise his discretion to award reciprocal discovery support denial again even if *de novo* review were to be applied.

Lilly continues to assert that the primary legal issue on appeal from the Eastern District of Virginia —whether Novartis is "found" there, for purposes of Section 1782—will not cause conflict with orders the trial courts may issue regarding the scope of any production from Novartis to Lilly under Section 1782 (Lilly's Objs. at 18–19). However, this has never been the basis for Novartis's opposition to reciprocal discovery or that Magistrate Judge Baker credited in his two orders denying reciprocal discovery. Rather, the concern with granting reciprocal discovery here

18

is that, *after* the Fourth Circuit decides the jurisdictional question, there might then be two federal district courts tasked with overseeing Lilly's demands for discovery from Novartis. This result would be manifestly inefficient and wasteful, imposing an unnecessary burden on the courts and the parties. The only party who stands to gain from this arrangement is Lilly, which would have multiple opportunities to seek the same discovery from Novartis in different forums. Although Lilly offers the hollow promise that it "does not intend to consume judicial or party resources by relitigating decided issues " (Lilly's Objs. at 20), Lilly's course of conduct in the parties' U.S. discovery disputes in the Eastern District of Virginia, Northern District of Illinois, and Southern District of Indiana (not to mention the proceedings against Genentech in the Northern District of California regarding the same subject matter) has amply demonstrated Lilly's willingness to relitigate the same question, in as many courts and before as many judges as necessary, until it achieves its desired outcome. *See supra* at pp. 2-6. Although Lilly has offered not to "pursue 'broader' discovery in EDVA for requests this Court has already adjudicated" (Lilly's Objs. at 20), this qualified promise rings hollow.[7] Reciprocal discovery should thus be denied at least during the pendency of the Fourth Circuit appeal, to prevent inefficiency, potential forum shopping, and the risk of conflicting outcomes.

Lilly argues that a determination that Lilly cannot obtain Section 1782 discovery from Novartis in the Eastern District of Virginia "would be a strong reason" for the Court to grant reciprocal discovery (*id.* at 20), but Lilly provides no reason why its request cannot wait until we know whether that "strong reason" will ever manifest. Lilly protests that it is unfair for its

---

[7] Novartis notes, for example, that Lilly has not promised to withdraw its Section 1782 application in the Eastern District of Virginia if reciprocal discovery is granted here, or even promised not to pursue broader discovery here than in the Eastern District of Virginia or not to file new Section 1782 applications and/or motions to compel in other venues.

discovery request to be decided on a later timeline (Lilly's Objs. at 20–21), but Lilly admits that the Fourth Circuit appeal has been expedited, and Lilly chose to sit on its request for reciprocal discovery in this court for almost three months after its Virginia application was quashed.[8] Contrary to Lilly's suggestion, Magistrate Judge Baker did not deny Lilly's request for reciprocal discovery because it was dilatory—rather, he viewed Lilly's delay as evidence disproving Lilly's claims that reciprocal discovery was so urgent that its request could not wait until after a Fourth Circuit decision. (ECF No. 45 at 3.) Lilly's delay should carry the same weight on this Court's de novo review—where there is a substantial risk of inconsistency if the Eastern District of Virginia application is reinstated, and there is no evidence of urgency or prejudice, reciprocal discovery should be denied at least until after the Fourth Circuit opinion issues.

Furthermore, even if the Fourth Circuit affirms vacatur of Lilly's Section 1782 application, reciprocal discovery should be denied as Novartis will no longer need to pursue Section 1782 discovery in this forum to achieve parity with Lilly. Although Lilly accuses Novartis of "inflicting asymmetric harm on a U.S. company" as a "foreign company evading discovery on the same issues and for use in the same foreign proceedings" (Lilly's Objs. at 24), it was in fact

---

[8] Lilly seeks to shift the blame for its delay to Novartis, pointing to the period of time between service of Lilly's objections to the subpoena on January 17 and its receipt of Novartis's written response six weeks later as a purported basis for being "unsure whether Novartis intended to pursue discovery in Indiana at all." (Lilly's Objs. at 22–23.) But again, the record does not support Lilly's characterization. Lilly knew on February 15 that Novartis was in the process of substituting counsel in the Section 1782 matters, causing a delay in responding to certain items predating the transition, and that Novartis's new counsel would "be in contact separately regarding" this case "shortly." Ex. H (Feb. 15 Email from Goodwin to Dechert). Furthermore, Lilly certainly knew by the time of the parties' March 9 conference with the Court that Novartis was pursuing Section 1782 discovery in Indiana, having by then received Novartis's March 2 letter and met and conferred by phone regarding the same, but Lilly still chose not to inform Novartis or the Court that it intended to seek reciprocal discovery until weeks later.

In addition, Lilly's invocation of the parties' protective order dispute in California, and Novartis's requests to stay the relevant order pending appeal where the impact of disclosure cannot be undone (Lilly's Objs. at 22 n.3), is wholly irrelevant to Lilly's lack of urgency in raising its request for reciprocal discovery here.

*Lilly* that first filed Section 1782 applications and *Lilly* that has been refusing to provide discovery in this district. Novartis filed the instant application only after the Eastern District of Virginia magistrate judge initially denied Novartis's motion to quash Lilly's subpoenas. By the time the Fourth Circuit litigation is finally resolved, there may very well be nothing to reciprocate. Let Novartis's position be clear: If Lilly will give up its attempts to obtain Section 1782 discovery from Novartis (including review of decisions relating to the same), Novartis will no longer pursue its application in this Court. Lilly complains that Novartis has left itself some room to pursue discovery here (Lilly's Objs. at 21), but this is only to the extent that Novartis cannot abandon its present discovery application while Lilly continues to aggressively pursue multiple, redundant avenues for obtaining the same discovery from Novartis in the U.S. (including indirectly, where possible from Genentech in California). Indeed, Lilly's brief threatens that, if reciprocal discovery is denied here, it will "seek discovery elsewhere, either awaiting a Fourth Circuit outcome *or in another jurisdiction.*" (Lilly's Objs. at 22 (emphasis added).)

Lilly also imputes nefarious motives to Novartis's decision to file the instant case here rather than seeking reciprocal discovery in the Eastern District of Virginia (Lilly's Objs. at 24), but Novartis's decision to proceed in this way was entirely consistent with Novartis's arguments on jurisdiction in the Eastern District of Virginia. Novartis petitioned this Court for Section 1782 discovery rather than filing a motion for reciprocal discovery in the Eastern District of Virginia, because this is where Lilly "is found" under the statute. 28 U.S.C. § 1782. Furthermore, a party's ability to file its own Section 1782 application elsewhere is a factor district courts have found to weigh *against* granting reciprocal discovery, because an affirmative Section 1782 application is the preferred mechanism for such a request. *See, e.g.*, *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) (denying request for reciprocal discovery where "there [we]re

no reciprocity concerns of the type discussed in *Intel* because [respondent] [wa]s free to initiate its own § 1782(a) action"); *see also In re Imanagement Servs., Ltd.*, No. 05-mc-0089-FB, 2005 WL 1959702, at *6 (E.D.N.Y. Aug. 16, 2005) ("The Court declines to impose reciprocal discovery obligations as a condition to granting [applicant's] § 1782 request. . . . [I]in the event [respondent] does identify such evidence [it seeks from applicant], it is free at that time to file its own request for discovery under § 1782.").

Given that Lilly's right to obtain the discovery it seeks is a live issue in the Eastern District of Virginia, and that Novartis will terminate this action if the Fourth Circuit affirms the Eastern District of Virginia ruling and Lilly stops its pursuit of Section 1782 discovery from Novartis, and because Lilly has articulated no specific urgency or prejudice,[9] this Court should deny the requested reciprocal discovery at this time, whether the standard of review is deferential or de novo.

## V.    **CONCLUSION**

For the foregoing reasons, Novartis respectfully requests that the Court overrule Lilly's objections to Magistrate Judge Baker's orders denying reciprocal discovery.

*[Remainder of page left intentionally blank]*

---

[9] Lilly no longer asserts that the timing of the European proceedings created any specific urgency. As Magistrate Judge Baker found, this assertion was contradicted by Lilly's choice to delay its request for reciprocal discovery in this district. (ECF No. 45 at 3.) Lilly now weakly protests that, if reciprocal discovery is not granted at this juncture, "Lilly's discovery of Novartis would be significantly delayed compared to Novartis' discovery of Lilly." (Lilly's Objs. at 20.) Where Lilly still has yet to produce a single document nearly six months after responding to Novartis's subpoena, this claim is dubious.

Date:  June 6, 2022

Respectfully submitted,

*Sally Franklin Zweig*
Sally Franklin Zweig, No. 11367-49
Brooke Smith, No. 32427-03
KATZ KORIN CUNNINGHAM, PC
334 North Senate Avenue
Indianapolis, IN 46204
Office: (317) 464-1100; Fax: (317) 464-1111
szweig@kkclegal.com
bsmith@kkclegal.com

Emily Rapalino [*PHV*]
Molly Grammel [*PHV*]
Louis L. Lobel [*PHV*]
GOODWIN PROCTER, LLP
100 Northern Avenue
Boston, MA 02210
Office: 617 570 8276; Fax:  617 321 4384
ERapalino@goodwinlaw.com
MGrammel@goodwinlaw.com
LLobel@goodwinlaw.com

*Counsel for Applicant Novartis Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **June 6, 2022**, a copy of the foregoing was filed electronically

using the Court's Case Management/ Electronic Case Filing (CM/ECF) System.

| | |
|---|---|
| William A. McKenna<br>WOODARD, EMHARDT, HENRY, REEVES &<br>WAGNER, LLP<br>*Eli Lilly and Company* | wmckenna@uspatent.com |
| Katherine A. Helm [PHV]<br>Sharon K. Gagliardi [PHV]<br>Jonathan D. Loeb [PHV]<br>Amanda K. Antons [PHV]<br>DECHERT LLP<br>*Eli Lilly and Company* | khelm@dechert.com<br>sharon.gagliardi@dechert.com<br>jonathan.loeb@dechert.com<br>amanda.antons@dechert.com |

*Sally Franklin Zweig*
Sally Franklin Zweig

24